HENDRICKSON LUMBER COMPANY *v.* PRETORIOUS.

Opinion delivered April 8, 1907.

SALE OF TIMBER—RESERVATION OF TITLE—WAIVER.—A vendor of timber who has reserved title therein until the purchase price is paid will not be held to have waived such reservation where, on learning that the timber has passed into the hands of a receiver who had been ordered to sell it, he applied to the court not to permit the property to be turned over to the purchaser until a sum sufficient to protect his claim should be set aside.

Appeal from Lee Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*H. F. Roleson,* for appellants.

1. The interveners are clearly attempting to take advantage of inconsistent remedies. "All actions which proceed upon the theory that the title to property remains in the plaintiff are naturally inconsistent with those which proceed upon the theory that the title has passed to the defendant." 15 Cyc. 257-8; 49 N. Y. 301; 121 N. Y. 161; 74 S. W. 596; 102 Wis. 436; 211 Ill. 597; 124 Ia. 332; 123 Wis. 116; 49 Mich. 53; 97 Wis. 446. Where remedies are not concurrent, and a choice between them is once made, the right to follow the other is forever gone. 46 Hun, 141; 34 N. Y. 473; 4 L. R. A. 145; 8 L. R. A. 216. And an election, once made with knowledge of the facts, is irrevocable and conclusive, irrespective of the intent. 15 Cyc. 262; 110 Wis. 405; 84 Am. St. Rep. 933. See, also, 65 Ark. 380, and authorities cited. If the title to the lumber did not pass to Downing under the contract with the interveners, he had nothing to convey to the receiver, and the interveners, instead of expressly affirming the sale and asking for purchase money, should have repudiated the title to the receiver and asked for their lumber. 64 Ark. 214; 52 Ark. 458; 76 Ark. 273. When title to the lumber passed out of Downing, the right to create a statutory lien was gone. This is true when property is assigned, or is in the hands of a receiver, or when taken by an officer under attachment. 45 Ark. 136; 64 Ark. 132; 52 Ark. 450; *Id.* 458.

*P. D. McCulloch* and *N. W. Norton,* for appellee.

1. The written contract, which plainly provides for $4.00 per thousand "for each and every thousand feet of lumber cut therefrom, when delivered," etc., should control. The fact that under the verbal contract "stumpage" was to be $3.00 per thousand is no reason for fixing that as the price for measured lumber delivered on the bank of the river. Stumpage is not lumber.

2. The doctrine of election does not apply. The property of the interveners was in the hands of the court, and they only asked that it be held in the hands of the court until enough money was realized to pay them. Cases cited by appellant relative to vendor's liens have no application.

Where there is a conditional sale of a chattel, the vendee's voluntary assignee obtains no better title than the assignor had. 13 Atl. 786; 20 Atl. 237; 10 So. 53; 6 Johns. Ch. 437; 1 Paige, Ch. 312. But in this State not even a *bona fide* purchaser for value is protected.

RIDDICK, J. W. Pretorious and O. T. Jacques owned certain lands in Lee County, Arkansas. They made a contract with Smith Downing by which they contracted to sell to him and one Shoptaugh the cottonwood timber on this land, the vendors retaining the title to the timber until the purchase price was paid.

Downing then made a contract for the sale of lumber to the Hendrickson Lumber Company, agreeing to deliver the lumber on the banks of the Mississippi River, on which contract the company advanced him money. To fill this contract, Downing cut the timber that he had bought from Pretorious and Jacques and sawed it into lumber. This lumber was stacked at Downing's mill several miles from the Mississippi River, where it was eventually to be delivered. While it was there, the Lumber Company took a mortgage on the lumber to secure the advances which it had made to Downing. Soon after executing this mortgage Downing filed a petition in the chancery court, stating that he was insolvent, and asking the court to appoint a receiver to take charge of his property for the benefit of his creditors. A receiver was appointed, who took charge of the lumber which had been made from the timber purchased from Pretorious and Jacques. Afterwards Downing and the Lumber Company filed a petition, stating that Downing had made a contract with the Lumber Company to sell the lumber to it; that the Lumber Company had made advances to Downing on the contract, and that Downing had executed a mortgage on the lumber to secure the advances; that the price the Lumber Company had agreed to pay for the lumber was a fair price and more than the receiver could secure by a public sale of the timber. They therefore asked that the receiver be directed to deliver the lumber to the Lumber Company upon its paying the amount due therefor under the Company's contract after deducting the advances made by the Lumber Company.

In compliance with this petition the court ordered the receiver to carry out the contract made by Downing with the Lumber Company.

Afterwards Pretorious and Jacques filed a petition, stating that they had sold the timber to Downing out of which the lumber in the hands of the receiver was made, and that it was agreed that the title to the timber and the lumber therefrom should remain in petitioners until the price thereof was paid. They therefore asked that the receiver be instructed that, before turning over the lumber to the Lumber Company, he require that company to pay over to him $1,308.00, a sum sufficient to protect the claim of petitioners and to hold the same subject to the orders of the court.

The court thereupon made the order as requested. Afterwards the Lumber Company filed an answer to the petition of Pretorious and Jacques, and denied that they had any interest in the timber held by the receiver.

On the hearing of this issue the chancellor found in favor of Pretorious and Jacques, and gave judgment in their favor for the sum of $800.45, and the Lumber Company appealed.

The first contention on the part of the Lumber Company is that Pretorious and Jacques by filing their intervening petition elected to treat the title of the property as having passed from them to Downing, and that their right to claim under a reservation of title is gone. It is well settled that when a vendor of personal property brings a suit for the price and recovers a judgment or levies an attachment upon the property sold he can not afterwards set up a claim of title to the property, for the two proceedings are inconsistent. *Cox* v. *Harris,* 64 Ark. 214; *Neal* v. *Cone,* 76 Ark. 273. But that is not the case here. The vendors, Pretorious and Jacques, finding that the property to which they had reserved title had under orders of the court passed into the hands of a receiver, who had been ordered to sell the property, came into court and set out the facts showing a reservation of title by them until the payment of the purchase price, and asked the court not to permit the property to be turned over by the receiver to the purchaser until a sum sufficient to protect the claim of petitioners has been paid to the receiver to be held by the court for them. We see nothing in this inconsistent with a claim that the title has been retained until the price is paid. The petitioners do not bring any action to recover the purchase price, nor ask a judgment against either their vendee or the receiver

for the price. What they do ask is in effect that the property be held by the receiver until the price is paid, or money deposited with him sufficient to cover the price. In other words, they ask the court to require the receiver to do what they had the right to do—hold the property until the purchase price was paid. There was nothing in this to estop them from asserting their reservation of title, and the contention of appellant on this point is overruled.

The next contention is that the evidence does not show that the timber from which the lumber was made came from the land owned by interveners, and that they do not show any right to or interest in it. The evidence bearing on this point was certainly very unsatisfactory, but we are not able to say that the finding of the chancellor was wrong, and his finding must be sustained.

This brings us to the questions raised by the cross appeal of Pretorious and Jacques. They contend that the chancellor should have allowed them four dollars per thousand feet of lumber, instead of three dollars per thousand. Their contention is based on the following facts: The contract for the sale of the timber by them to Downing was made on the 15th of July, 1904, but prior to that the parties had made a verbal agreement with Downing that he might cut timber. The allegation in the petition in reference to this agreement is as follows: "That pending said negotiations, and before a final conclusion was reached between the parties, it was verbally agreed that the said Shoptaugh & Downing should be allowed to take from the lands cottonwood timber at the price of $3 per 1,000 feet in the tree with the understanding that if a final contract was agreed upon by the parties such timber which had in the meantime been cut by them, and not paid for, should take its place in the final contract with the whole, and be paid for as the remainder of the timber; the title to said timber and the lumber sawed therefrom, so taken by the said Shoptaugh & Downing in the meantime, was to be and remain in petitioner until paid for."

The timber out of which the lumber in controversy here was made was cut under this verbal contract and before the making of the written contract.

Afterwards the parties did enter into a written agreement for the sale of the merchantable timber on lands described in the contract, in which they agreed to pay the sum of $4,250 for the timber in installments evidenced by three notes payable in four, eight and twelve months after date respectively. This contract contains the following stipulation:

"It is also agreed by the said second parties that the said first parties are to retain the title to said timber and lumber sawed therefrom until all the above described notes are fully paid and discharged, and that the said second parties are to pay from the proceeds of the sale of each and every thousand feet of lumber cut therefrom, when the same is delivered on the banks of the Mississippi River at the nearest landing to their saw mill and measured by F. S. Hendrickson Lumber Company, or other company, person or persons, to whom said second parties may sell, the sum of four dollars until they have paid in full their full notes."

The interveners contend that under this provision they were entitled to be paid four dollars per thousand for each and every thousand feet of lumber delivered on the banks of the Mississippi River until the notes were paid in full. But, as before stated, the timber from which was cut the lumber in controversy here was not cut under this written contract, but under the verbal contract by which the price of timber was fixed at three dollars per thousand feet in the tree. It may be true that the consideration named in the written contract was intended to cover all the timber taken from the land by the purchaser, whether it was removed before or after the written contract. But the written contract made in July is by its terms confined to the timber then on the lands described in the contract, and it reserves the title to such timber and the lumber sawed from it, and provides that the timber must be paid for at the rate of four dollars per thousand until the total purchase price is paid. There is no reference to the timber from which the lumber in controversy here was made, for it had already been cut and removed from the land under a prior verbal contract by which the price was fixed at three dollars per thousand feet in the tree. This timber had not only been cut and removed from the land by the purchaser Downing before the written contract was

made, but Downing had received large advances from the appellant company to enable him to cut and saw the timber. To secure the company for these advances, he has since given it a mortgage on the lumber in controversy. By the verbal contract under which this lumber was cut, Pretorious and Jacques reserved the title until the price, three dollars per thousand feet, was paid. As we have shown, the written contract does not purport to alter the verbal contract in any way, for it does not refer to the timber that had already been cut and removed from the land. We are therefore of the opinion that Pretorious and Jacques, as against the appellants, have no right to hold this lumber for more than three dollars per thousand feet, and that the chancellor properly so held. After considering the evidence, we feel quite certain that these parties have been allowed full compensation for all the timber cut from their lands, and that as to them also the judgment should be affirmed.